# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| PAKITA MCKINNEY, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br>  v.<br><br>CREDIT BUREAU OF NAPA COUNTY INC. d/b/a CHASE RECEIVABLES,<br><br>        Defendant. | Case No.: 19-cv-1064<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Pakita McKinney is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes.

5. Defendant Credit Bureau of Napa County, Inc. d/b/a "Chase Receivables" ("Chase Receivables") is a foreign business corporation with its principal place of business located at 165 Passaic Avenue, Suite 200 Fairfield, New Jersey 07004.

6. Chase Receivables is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Chase Receivables is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

8. Chase Receivables is a debt collector as defined in 15 U.S.C. § 1692a.

## **FACTS**

9. On or about January 21, 2019, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Creditor: MIDNIGHT VELVET – DMS" ("Midnight Velvet"). A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, specifically, the purchase of clothing and household goods. *See* https://www.midnightvelvet.com/.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

13. Exhibit A states that the "ACCOUNT BALANCE" is $206.55.

14. The body in Exhibit A states that it is intended "to inform you of an offer to resolve your overdue account with our client."

2

15. <u>Exhibit A</u> also contains the following offers to resolve the debt:



16. However, on the face of <u>Exhibit A</u>, it is impossible to determine whether payment according to the schedules described would actually resolve the debt.

17. <u>Exhibit A</u> states:

***This offer refers only to the specific account(s) in question for the balance listed above***

18. The representation that the "offer refers only to the specific account(s) in question *for the balance listed above*" is confusing and misleading because it suggests to the unsophisticated consumer that she could tender payment according to the instructions in <u>Exhibit A</u> but still would not resolve the debt, for example if the creditor or debt collector adds interest or other amount to the balance.

3

19. The statements that the offers in <u>Exhibit A</u> are "an opportunity to satisfy your outstanding debt" and that the offers refer "only . . . **for the balance listed above**" taken together are contradictory and inherently false, deceptive, misleading, and confusing.

20. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading the consumer about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See e.g., Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). But due to a few remaining dollars or cents of interest, Defendant or the creditor could continue to collect not only the additional interest that accrued during the pendency of the settlement, but also the "remaining balance" of the alleged debt itself.

21. Whether a payment would actually settle the debt is, by definition, a material term of a settlement offer and must be communicated clearly and effectively. *E.g., Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *7-8 (E.D. Wis. Apr. 26, 2018) (in the context of settlement offers, "ambiguity itself can prove a violation.") (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686-87 (7th Cir. 2017)); *see also, Knight v. Midland Credit Mgmt.*, 2019 U.S. Dist. LEXIS 59794, at *19 (E.D. Pa. Apr. 5, 2019) (ambiguity as to circumstances under which debt collector would report settled debt as "paid in full" rather than "paid in full for less than the full balance" violated the FDCPA); *Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to

4

wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments potentially violated the FDCPA).

22. Moreover, the unsophisticated consumer understands that credit card debts may accrue interest and fees, and would undoubtedly understand the statement that the settlement offer "refers only to the specific account(s) in question for the balance listed above" as meaning that the account was bearing interest and fees. *See, e.g., Deporter v. Credit Bureau of Carbon County*, 2015 U.S. Dist. LEXIS 55345, at *15-16 (D. Colo. Apr. 28, 2015) (collecting cases and explaining that, in the context of credit card debts, the FDCPA does not place an "affirmative duty to disclose the accrual of interest because 'even the most unsophisticated consumer would understand that credit card debt accrues interest.'"); *see also, Taylor v. Fin. Recovery Servs.*, 886 F.3d 212, 215 (2d Cir. 2018) ("if a collection notice correctly states a consumer's balance without mentioning interest or fees, and no such interest or fees are accruing, then the notice will neither be misleading within the meaning of Section 1692e, nor fail to state accurately the amount of the debt under Section 1692g.").

23. Upon information and belief, the alleged debt referenced in Exhibit A was not bearing interest or fees as of the date of Exhibit A.

24. Exhibit A does not clearly state the amount of the debt, and misleadingly implies to the unsophisticated consumer that the debt was bearing interest and fees.

25. The unsophisticated consumer would believe Defendant was attempting to collect interest and fees, and would feel intimidated into calling Defendant to resolve the account as soon as possible because of the false specter of accruing interest and/or fees.

5

26. Upon information and belief, the alleged debt referenced in Exhibit A charged off sometime prior to the mailing of Exhibit A, and is not bearing post-charge-off interest or fees. *See, e.g., Nugent v. Allianceone Receivables Mgmt.*, 2015 U.S. Dist. LEXIS 181175, at *2-3 (W.D. Mo. Nov. 15, 2015); *see also, Delgado v. Client Servs.*, 2018 U.S. Dist. LEXIS 37711, at *1-2 (N.D. Ill. Mar. 7, 2018) (Capital One account was not bearing post-charge-off interest).

27. Upon information and belief, when the alleged debt charged off, the creditor ceased mailing periodic statements, and waived its right to collect interest on this account. *See,* 12 C.F.R. § 226.5(b)(v)(2)(i); *Wilder v. J.C. Christensen & Assocs.*, 2016 U.S. Dist. LEXIS 168440, at *15-16 (N.D. Ill. Dec. 6, 2016) (discussing waiver); *Ruge v. Delta Outsource Group, Inc.*, 2017 U.S. Dist. LEXIS 35047, at *10-11 (N.D. Ill. Mar. 13, 2017 (same).

28. A debt collector that has been hired to collect a specific balance and interest and fees are not accruing on the account does not state the balance in a clear, nonconfusing manner when it instructs the consumer to telephone the debt collector "for an exact amount" owed. *E.g., Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004).

29. In *Chuway*, the Seventh Circuit held that an initial debt collection letter that instructed the consumer, "to obtain your most current balance information, please call 1-800-916-9006" did not state the amount of the debt in a non-confusing manner. *Chuway*, 362 F.3d at 947, 949.

30. The Seventh Circuit reasoned:

> If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed---and stopping there, without talk of the "current" balance. If, instead the debt collector is trying to collect the listed balance plus the interest running on it or other charges, he should use the safe-harbor language of *Miller*: "As of the date of this letter, you owe $ ___ [the exact amount

6

> due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800- [phone number]."

*Chuway*, 362 F.3d at 949 (quoting *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000).

31. <u>Exhibit A</u> states an "ACCOUNT BALANCE" but confusingly and misleadingly states that balance is increasing by instructing the consumer that the settlement offer "refers only to the specific account(s) in question for the balance listed above."

32. Plaintiff was deceived, misled, and confused by <u>Exhibit A</u>.

33. The unsophisticated consumer would be deceived, misled, and confused by <u>Exhibit A</u>.

34. Plaintiff had to spend time and money investigating <u>Exhibit A</u>, and the consequences of any potential responses to <u>Exhibit A</u>.

### *The FDCPA*

35. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under

7

the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

36. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15

8

U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

37. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

38. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the character, amount, or legal status of any debt."

39. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

40. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

41. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

42. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

## COUNT I – FDCPA

43. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

44. Exhibit A contains confusing and misleading representations about whether the offer to "resolve" the account would, in fact, settle the debt because the amount of the debt may be increasing. *See, Nichols*, U.S. Dist. LEXIS 15037, at *19.

45. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10).

## CLASS ALLEGATIONS

46. Plaintiffs bring this action on behalf of a class consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the Complaint in this action, (c) purporting to offer the consumer to resolve the debt and stating the "offer refers only to the specific account(s) in question for the balance listed above" (d) where the collection letter was attempting to collect a debt incurred for personal, family, or household purposes, (e) the amount of the debt was not increasing, and (f) the letter in the form of <u>Exhibit A</u> was mailed between July 25, 2018 to July 25, 2019, inclusive, (g) and was not returned by the postal service.

47. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

48. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether Defendant complied with the FDCPA.

49. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

50. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

51. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

52. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 25, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com